UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————

VICK HARESH PATEL,

          Plaintiff,           Case No.

vs.                                     Hon.

CONSOLIDATED RESOURCE
IMAGING, LLC, a Michigan Limited
Liability Company,

          Defendant.
_____/

James C. Baker (P62668)
Raymond J. Sterling (P34456)
Attorneys for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
jbaker@sterlingattorneys.com
rsterling@sterlingattorneys.com
_____/

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff, Vick Haresh Patel, by his attorneys Sterling Attorneys at Law, P.C., for his Complaint and Jury Demand against Defendant, Consolidated Resource Imaging, LLC, a Michigan Limited Liability Company, states:

1. This is a lawsuit for race, national origin, and color discrimination under the employment provisions of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2201 *et seq*.

2. Plaintiff is a resident of Jasper, Alabama.

3. At times relative to his contractual employment relationship with Defendant, Plaintiff also maintained legal residences in Maryland and Texas.

4. At no time during his contractual employment relationship with Defendant to present did or does Plaintiff have any residence relationship with the State of Michigan.

5. Plaintiff is a United States citizen with Asian-Indian ethnicity and color.

6. Plaintiff, a former contractual employee of Defendant as defined by the Elliott-Larsen Civil Rights Act and authorities interpreting and applying same, was involuntary separated and his contractual relationship terminated by Defendant on or about May 2, 2019.

7. Defendant is a Michigan Limited Liability Company, created, incorporated, and authorized under the laws of the State of Michigan, having its principal place of business in Grand Rapids, Kent County, Michigan.

8. No Member(s) of Defendant is/are residents of Alabama, Maryland, or Texas.

9. Defendant is employer as defined in § 201(a) of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

**JURISDICTION AND VENUE**

10. Plaintiff was a contractual employee of Defendant until May 2, 2019.

11. The events at issue substantially occurred at and through Defendant's Grand Rapids, Kent County, Michigan location.

12. Plaintiff worked with and for Defendant out of its satellite locations, primarily in the Middle East, yet Defendant maintained control of its management and employees, and directed its operations, through its Grand Rapids location.

13. The amount in controversy exceeds $75,000, which includes in substantial part his $720/day contractual rate of compensation lost since termination for which he has been unable to mitigate against due to a continuing adverse security clearance report.

14. This Court has jurisdiction over Plaintiff's claims pursuant to 28 USC 1332 (diversity of citizenship).

## FACTS UNDERLYING PLAINTIFF'S CLAIMS

15. Plaintiff is of Indian-Asian ethnicity and color, a racial trait he believes made him a valuable asset to Defendant.

16. Plaintiff engaged in intelligence-gathering functions for Defendant, a contractor with the federal government.

17. Plaintiff was abused by Defendant's systemic discrimination practices at the hands of his supervisors and contractors, all of whom were under Defendant's control.

18. It was Plaintiff's race, national origin, and color, that were the predominant causes of the discrimination against him.

19. Plaintiff's Indian-Asian ethnicity – most notably his commitment to performing any task asked of him, at any time – made him a target of his Caucasian supervisors and co-workers.

20. Defendant, by its management and in-the-filed supervisor took advantage of Plaintiff's commitment to Plaintiff's detriment.

21. For example, when manning a duty station, commonly referred to as "the box," Defendant's policy was to have two people physically present at all times; however, that often was not the regular practice.

22. Plaintiff's Caucasian supervisor and co-workers knew Plaintiff's ability and propensity to work and perform the job of two people; therefore, his Caucasian supervisor would regularly assign Plaintiff to man the "box" alone, while he and others ventured out for sight-seeing and exploratory expeditions.

23. Plaintiff would work 12-hour shifts, only to be asked by his Caucasian supervisor to cover for another shift while the white contractors went on sight-seeing excursions during their shifts.

24. Plaintiff covered for them because he felt he had to.

25. Plaintiff's race, national origin, and color created in his Caucasian supervisor and co-workers opportunities to verbally discriminate against him, including, for example, Plaintiff being called "IT" (referencing "information

4

technology" – an area his white co-workers derogatorily considered exclusive to those of Indian-Asian ethnicity).

26. The treatment he received because of his Indian-Asian ethnicity gave Plaintiff's Caucasian supervisor and co-workers a sense of security that allowed them to go off on their extra-contractual/extra-curricular excursions, comfortable in their belief that Plaintiff would be quiet and would take on the extra loads placed on him.

27. Plaintiff's Caucasian supervisor and co-workers also knew they would not get into any trouble from the company despite violating company policies and practices.

28. All the while Defendant knew or should have known the Caucasian contractors were avoiding their fair share of the work, while collecting the same or more pay than Plaintiff for less hours worked.

29. When it came time to extend time in certain areas, or place contractors in particularly difficult geographical locations, when the Caucasian contractors balked, Defendant used Plaintiff, knowing that he would take it without comment or controversy.

30. When things of limited significance were reported to Defendant, even with factual discrepancies, Plaintiff's Caucasian counterparts knew their Caucasian supervisor had their backs, while the same was not true for Plaintiff.

31. On information and belief there were instances where African-American employees/contractors were subjected to adverse treatment by the Caucasian supervisor, disparate to the treatment that supervisor showed Caucasian employees/contractors.

32. Plaintiff was abused by Defendant's systemic discrimination at the hands of his supervisor, Defendant's other Caucasian employees/contractors, and Defendant itself.

**EVENTS LEADING UP TO AND CAUSING TERMINATION**

33. Plaintiff caused damage to a vehicle, and initially used limited judgment reporting his involvement in causing the damage.

34. The discriminatory and disparate events occurring during his time working for Defendant, for Defendant's Caucasian supervisor, and Caucasian co-workers, were the cause for Plaintiff's lapse of judgment.

35. Plaintiff's conduct was emblematic of the discriminatory and disparate treatment he received at the hands of his Caucasian supervisor and co-workers.

36. Plaintiff saw his Caucasian counterparts get away with their extra-contractual/extra-curricular activities with impunity.

37. A specific example to support Plaintiff's reasonable beliefs that Defendant engaged in discriminatory selected enforcement of its policies and procedures occurred relative to another person of color.

38. Prior to the events on early May 2019, Plaintiff is aware that Defendant disciplined at least one African-American contractor for conduct a Caucasian contractor engaged in, where the Caucasian contractor was not disciplined to the same extent as the African-American contractor.

39. When confronted with the investigation into the damaged vehicle, Plaintiff felt constrained by Defendant's discriminatory environment.

40. Plaintiff's less-than-equal treatment engrained in him the reasonable belief that he, an Indian-Asian, would never be given the benefit of any doubt.

41. Plaintiff initially was not forthright in his involvement regarding the damaged vehicle, but when later confronted by Defendant's investigation, Plaintiff was forthright in his role and involvement.

### PLAINTIFF'S REASONABLE BELIEFS BECOME THE REALITY

42. After Defendant investigated the cause of the damage to the vehicle, including Plaintiff's initial and incorrect version, followed by Plaintiff's forthright acknowledgment to his supervisor, Plaintiff's contractual employment with Defendant was terminated.

43. The extended contract, with additional compensation for the type and location of work Plaintiff was performing, was abruptly cut off.

44. Added to that, Defendant made a seriously adverse report against Plaintiff's security clearance.

45. To the present, the existence of that adverse security clearance report, which remains on Plaintiff's record, and to a much lesser extent his termination, have caused Plaintiff to be essentially unemployable in any position requiring a security clearance.

46. The adverse report to his security clearance has resulted in Plaintiff being denied opportunities in the intelligence community; opportunities that would result in substantial compensation and advancement.

47. On information and belief, Defendant was not required to make any report against Plaintiff's security clearance; the conduct alleged to have supported the end of his employment relationship with Defendant did not rise to a level commensurate with the security clearance report Defendant made against Plaintiff, let alone any security clearance report.

48. Making the adverse report it did is further evidence of Defendant's discriminatory and disparate treatment of Plaintiff, an Indian-Asian person, a person of color.

49. Aside from the damages of a lost career, the lost compensation and benefits of that career, so long as the adverse report continues on his security clearance, Plaintiff will not be re-employable in intelligence-gathering, a field in which he excelled for Defendant.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF THE
## MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

50. Plaintiff incorporates by reference the allegations made in Paragraphs 1-49, as if fully restated herein.

51. Plaintiff was one of very few non-Caucasian contractors employed by Defendant.

52. Plaintiff was qualified to perform his job.

53. Plaintiff met or exceeded the requirements of his position throughout his employment.

54. Defendant discriminated against Plaintiff with respect to his terms, conditions, and privileges of employment based on race.

55. Defendant treated similarly-situated non-Indian employees more favorably than Plaintiff.

56. Plaintiff's race was a factor in Defendant's decision to fire him.

57. Plaintiff's race was a factor in Defendant's decision to make an adverse report against Plaintiff's security clearance.

58. Defendant was predisposed to discriminate on the basis of race and acted on that predisposition.

59. Defendant's alleged reason for terminating Plaintiff and/or making the security clearance report was a pretext for race discrimination.

60. Defendant's actions were intentional and engaged in with reckless disregard for Plaintiff's rights.

61. Defendant's discrimination adversely affected Plaintiff's opportunity for continued employment, and adversely affect his terms, conditions, and privileges of employment in violation of Elliott-Larsen § 202(1).

62. As a direct and proximate result of Defendant's violation, Plaintiff has incurred and will continue to incur the following injuries:

- Lost past and future compensation, including the value of lost past and future fringe benefits;
- Emotional distress, pain and suffering, humiliation, and betrayal;
- Incidental and consequential damages; and
- Attorney fees.

## COUNT II

### DISCRIMINATION BASED ON NATIONAL ORIGIN IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

63. Plaintiff incorporates the preceding paragraphs by reference.

64. Defendant discriminated against Plaintiff with respect to his terms, conditions, and privileges of employment based on national origin.

65. Defendant treated similarly-situated non-Indian employees more favorably than Plaintiff.

66. Plaintiff's national origin was a factor in Defendant firing him.

67. Plaintiff's national origin was a factor in Defendant's decision to make an adverse report against Plaintiff's security clearance.

68. Defendant was predisposed to discriminate on the basis of national origin and acted on that predisposition.

69. Defendant's alleged reason for terminating Plaintiff and/or making the security clearance report was a pretext for national origin discrimination.

70. Defendant's actions were intentional and engaged in with reckless disregard for Plaintiff's rights.

71. Defendant's discrimination adversely affected Plaintiff's opportunity for continued employment, and adversely affect his terms, conditions, and privileges of employment in violation of Elliott-Larsen § 202(1).

72. As a direct and proximate result of Defendant's violation, Plaintiff has incurred and will continue to incur the following injuries:

- Lost past and future compensation, including the value of lost past and future fringe benefits;

- Emotional distress, pain and suffering, humiliation, and betrayal;

- Incidental and consequential damages; and

- Attorney fees.

### COUNT III

**DISCRIMINATION BASED ON COLOR
IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**

73. Plaintiff incorporates the preceding paragraphs by reference.

11

74. Defendant discriminated against Plaintiff with respect to his terms, conditions, and privileges of employment based on color.

75. Defendant treated similarly-situated non-Indian employees more favorably than Plaintiff.

76. Plaintiff's color was a factor in Defendant's decision to fire him.

77. Plaintiff's color was a factor in Defendant's decision to make an adverse report against Plaintiff's security clearance.

78. Defendant was predisposed to discriminate on the basis of color and acted on that predisposition.

79. Defendant's alleged reason for terminating Plaintiff and/or making the security clearance report was a pretext for discrimination based on color.

80. Defendant's actions were intentional and engaged in with reckless disregard for Plaintiff's rights.

81. Defendant's discrimination adversely affect Plaintiff's opportunity for continued employment, and adversely affect his terms, conditions, and privileges of employment in violation of Elliott-Larsen § 202(1).

82. As a direct and proximate result of Defendant's violation, Plaintiff has incurred and will continue to incur the following injuries:

- Lost past and future compensation, including the value of lost past and future fringe benefits;
- Emotional distress, pain and suffering, humiliation, and betrayal;

- Incidental and consequential damages; and

- Attorney fees.

WHEREFORE, Plaintiff Vick Haresh Patel respectfully requests that this Honorable Court enter judgment against Defendant Consolidated Resource Imaging, LLC, in whatever amount in excess of $75,000 Plaintiff is found to be entitled, together with consequential damages, costs, interest, and attorney fees; Plaintiff also requests this Honorable Court order Defendant to employ any and all means necessary to rescind, retract, and/or remediate the adverse security clearance report it so wrongly created against Plaintiff to his detriment.

## JURY DEMAND

Plaintiff Vick Haresh Patel, by his attorneys Sterling Attorneys at Law, P.C., requests a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By: /s/James C. Baker
James C. Baker (P62668)
Raymond J. Sterling (P34456)
Attorney for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
jbaker@sterlingattorneys.com

Dated: December 29, 2021

13